The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and upon the briefs and argument of counsel. The plaintiff has shown good ground to reconsider the evidence while the defendant has not. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The 8 June 1995 Administrative Decision and Order of Special Deputy Commissioner W. Bain Jones, Jr., approving defendants' Application to Terminate or Suspend Payment of Compensation Pursuant to G.S. § 97-18.1, is hereby incorporated herein.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Form 21, approved by the Industrial Commission on 29 October 1993, six Supplemental Memorandums of Agreement as to Payment of Compensation, respectively approved by the Industrial Commission on 19 November 1993, 13 December 1993, 4 March 1994, 7 June 1994, 19 August 1994 and 18 October 1994, a Pre-Trial Agreement, at the hearing, and by post-hearing agreement as:
STIPULATIONS
1. On 2 March 1993, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Wausau Insurance Companies was the workers' compensation insurance carrier on the risk.
4. Plaintiff's average weekly wage was $520.31, which yields a compensation rate of $346.89.
5. From 2 March 1993 through 27 March 1994, plaintiff received temporary total disability compensation totaling $6,488.20. From 28 March 1994 through 13 February 1995, plaintiff received temporary partial disability compensation totaling $8,952.89.
6. Two pages of plaintiff's educational records, received by the Industrial Commission on 7 November 1995, are admitted into evidence.
7. A set of plaintiff's medical records, received by the Industrial Commission on 5 December 1995, is admitted into evidence.
EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Verma, Dr. Scully, Dr. Berger and Ms. Kilpatrick are OVERRULED.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was thirty-five years old, divorced, and the mother of two children. Plaintiff has graduated from high school. After graduation, plaintiff attended Wilson Technical Community College where she studied business for one year.
2. Plaintiff began her employment with defendant-employer on 1 May 1989. Plaintiff was employed as a machine operator. Plaintiff's position as a machine operator required her to stand while working.
3. On 2 March 1993, plaintiff was performing her usual duties for defendant-employer when she struck her right knee on a piece of machinery. As a result of her injury, plaintiff experienced right knee pain and swelling which increased in severity. Plaintiff first sought medical treatment for her right knee injury on 22 March 1993 when she presented to Dr. Michael Glover. Dr. Glover initially treated plaintiff with Lodine and Voltaren, non-steroidal, anti-inflammatory medications (NSAIDS).
4. Dr. Glover's conservative treatment did not relieve plaintiff's right knee pain. In addition, the NSAIDS caused plaintiff to have stomach discomfort and excessive flatulence.
5. On 2 August 1993, Dr. Glover performed a right knee arthroscopy with chondroplasty. Despite the surgery and Dr. Glover's continued treatment, plaintiff continued experiencing knee pain which prevented her from returning to her regular employment with defendant-employer.
6. On 10 November 1993, Dr. Glover referred plaintiff to Dr. Bartlett, who first examined plaintiff on 19 November 1993. On that date, plaintiff continued to have right knee pain and her quadriceps were profoundly weak. Dr. Bartlett prescribed physical therapy. Although plaintiff's knee condition improved while she was participating in the prescribed therapy, her right knee pain persisted. On 6 January 1994, plaintiff underwent a diagnostic arthroscopy performed by Dr. Bartlett.
7. As a result of his findings during the diagnostic arthroscopy, Dr. Bartlett performed a patellofemoral realignment and chondroplasty of the femoral trochlea on 12 January 1994. Following surgery, plaintiff's condition steadily improved. On 28 March 1994, plaintiff returned to work for defendant-employer as a parts sorter. Upon returning to work, plaintiff was only capable of earning wages that were less than the wages she earned prior to 2 March 1993.
8. As a parts sorter, plaintiff was allowed to work while in a seated position. Defendant-employer provided plaintiff with a parking space that was reserved for handicapped persons. In addition, defendant-employer provided plaintiff with a wheelchair for use while sorting parts and when going to and from the rest room or the parking lot.
9. On 26 May 1994, plaintiff retained the capacity to perform sedentary work. Sedentary work is work that involves exerting up to ten pounds of force occasionally, or negligible force frequently, to carry, push, pull or lift objects. Sedentary work is performed primarily in a seated position with only brief periods of walking or standing. With the accommodations provided by defendant-employer, plaintiff's part sorter position was sedentary employment which plaintiff was capable of performing through the date of the hearing on 6 March 1995 in this matter.
10. On 18 May 1994, plaintiff presented to Dr. Dellasega for an evaluation of her abdominal discomfort. Dr. Dellasega prescribed Levsin and recommended that plaintiff limit her intake of dairy products and begin a high fiber diet. Plaintiff's abdominal discomfort was caused or significantly aggravated by the prescription medications she took for treatment of her right knee injury. Dr. Dellasega's treatment tended to effect a cure or give relief.
11. On 2 June 1994, plaintiff's right knee injury reached maximum medical improvement. On that date, plaintiff had a twenty percent permanent partial impairment of her right knee. After 2 June 1994, Dr. Bartlett had no specific treatment options to offer plaintiff.
12. On 22 August 1994, plaintiff began receiving treatment and counseling for depression and somatoform disorder at the Wilson-Greene Counseling Center. Plaintiff continued receiving treatment for these conditions through the date of the hearing in this matter. As part of her treatment, plaintiff began taking Zoloft, an anti-depressant medication prescribed by Dr. Verma. Zoloft improved plaintiff's psychiatric condition.
13. Plaintiff's depression and somatoform disorder resulted from her injury on 2 March 1993. Plaintiff's diminished capacity to earn wages after 28 March 1994 resulted from her depression or somatoform disorder.
14. On 1 September 1994, plaintiff extended her work hours as a parts sorter from six to eight hours per day. Through the hearing on 5 March 1995, plaintiff continued to work eight hours per day as a parts sorter, earning wages that were less than the wages she earned prior to 2 March 1993.
15. On 2 September 1994, plaintiff presented to Dr. Bartlett complaining of left knee pain. This left knee pain resulted from plaintiff having to alter her gait and bear more weight on her left leg because of the pain in her right knee. Following his examination, Dr. Bartlett released plaintiff from his care and referred her to Dr. Vernick.
16. After evaluating plaintiff on 25 September 1994, Dr. Vernick prescribed physical therapy, cushioned insoles for plaintiff's shoes and eucalyptamint cream to be applied to her knees.
17. On 24 October 1994, plaintiff presented to Dr. Scully at Duke University Medical Center. On that date, plaintiff's left knee was painful and had a limited range of motion on extension. Dr. Scully injected her left knee with Lidocaine and prescribed physical therapy to strengthen her quadriceps. On 28 November 1994, plaintiff's condition had improved. Dr. Scully recommended continued physical therapy and gradual increases in her activity level.
18. Plaintiff was next examined by Dr. Scully on 1 May 1995. On that date, plaintiff's left knee had internal instability and significantly increased pain. Dr. Scully excused plaintiff from work for one week as a result of her knee pain and scheduled her for an MRI of her left knee.
19. On 8 May 1995, Dr. Scully prescribed a Palumbo brace for plaintiff's left knee. On that date, plaintiff was unable to return to work as a result of her left knee pain. When plaintiff returned to Dr. Scully on 23 August 1995, he prescribed a different knee brace for her left knee and continued physical therapy.
20. Plaintiff's left knee condition was caused or significantly aggravated by her injury on 2 March 1993 and was a natural result of the injury to her right knee.
21. Prior to 1 May 1995, plaintiff's diminished earning capacity resulted from her injury on 2 March 1993. Since 1 May 1995, plaintiff's inability to return to work for defendant-employer has resulted from her injury on 2 March 1993.
22. Plaintiff would medically benefit from the use of a wheelchair outside of her employment with defendant-employer.
23. As the result of her 2 March 1993 injury by accident and causally related left knee injury, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment from 9 May 1995 through the present.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 2 March 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, which caused or materially aggravated the injury to her left knee. G.S. § 97-2(6).
2. On 8 June 1995, the Industrial Commission improperly allowed Defendants' Application to Suspend or Terminate Payment of Compensation from 2 September 1994. G.S. § 97-18.1.
3. As the result of her injury by accident, plaintiff is entitled to have defendants pay her temporary partial disability compensation for the period from 2 September 1994 to 8 May 1995. G.S. § 97-30.
4. As a result of her injury on 2 March 1993, plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $346.89 per week from 9 May 1995 through the present and continuing until she returns to work or until further order of the Commission. G.S. § 97-29.
5. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of her 2 March 1993 injury by accident, the causally related left knee injury, including providing a wheelchair to plaintiff for use at home and elsewhere away from work, and as the result of her depression, somatoform disorder and related stomach discomfort. G.S. § 97-2(19);
G.S. § 97-25. Plaintiff is also entitled to have defendants pay for all medical expenses incurred for the examinations, evaluations and treatments provided by Dr. Dellasega. G.S. §97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Hedrick and enters the following:
AWARD
1. As the result of her injury by accident, defendants shall pay to plaintiff temporary partial disability compensation for the period from 2 September 1994 to 8 May 1995. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
2. As the result of her injury by accident, defendants shall pay plaintiff temporary total disability compensation at the rate of $346.89 per week from 9 May 1995 through the present and continuing until she returns to work or until further order of the Commission. The amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her 2 March 1993 injury by accident, including treatment for her depression, somatoform disorder and stomach discomfort, as well as expenses for the treatment of her left knee and including the cost of providing plaintiff with a wheelchair for use at her home and elsewhere away from work in addition to providing her one at work should she be able to return to work.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded above is approved for counsel for plaintiff. From the amounts having accrued, the fee shall be deducted from the amount owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth compensation check payable to plaintiff thereafter.
5. Defendants shall pay the costs, including an expert witness fee of $165.00 for Dr. Verma.
* * * * * * * * * * * *
Based upon the foregoing findings of fact an conclusions of law, the Full Commission enters the following:
ORDER
The 8 June 1995 Administrative Decision and Order of Special Deputy Commissioner W. Bain Jones, Jr., approving defendants' Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation is hereby VACATED.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________ DIANNE C. SELLERS COMMISSIONER
S/ ____________ COY M. VANCE COMMISSIONER